Good afternoon and a welcome to Seattle and to the Nakamura courthouse. This is the time set for oral argument in the case of Maria Ari Cruz Marisol Rojas-Espinoza v. Todd Blanche. The counsel could please come forward. May it please the court my name is Elizabeth or I'm sorry could I start on yes you can if you can pull those microphones down as it speak right into them so we can hear you okay thank you is this okay better okay thank you may it please the court Elizabeth Rodriguez appearing for petitioner Ms. Rojas-Espinoza her partner and her two minor children I would like to reserve five minutes for a rebuttal I would like to make four points today the first point is that the board failed to meaningfully analyze the family-based nexus and instead we would argue collapsed the case into private criminality the second point is that the board's PSG analysis was too rigid and did not address the preserved family kinship theory third the agency's treatment of government inability or unwillingness and cat was legally incomplete because they discounted the country conditions and evidence and the fact that the threat followed petitioners even after she relocated so essentially that argument would be based on that they did not aggregate the different events and fourth the state issue which should be viewed through the current fully developed record and the serious merits questions that are being raised and the particular particularized threat of death sexual violence and family targeting so on this day can I ask first of all uh is your client still in the United States as far as I know yes okay so the so we we denied a stay in March but as far as you know he has not yet been removed as far as I don't know okay and so you're asking us I mean you're asking us to grant the petition for review if we do that well to reinstate it then right I'm sorry if we if we agree with you that the petition for review should be granted then we would set aside the removal order and there wouldn't be anything to stay at that point would there that's correct okay okay and if we deny the petition for review I take it if there would be no basis for a stay right that yes that's correct um and I guess my last question on the stay is that there was some as you're aware that three judge panel uh issued an order or issued an opinion that addressed the of you know how stays ought to be processed do you do you care about any of that I do care and I do why why do I care you care about whether you get a stay now but why why does your client care about the timing of our processing of stays in general well I don't know that my client necessarily would know about the processing of stays but I would believe that it's important to her because especially an asylum case came case excuse me like this one is there is a risk to her and her family of harm as discussed in the briefs right but I guess the the question you know the panel opined on whether you know when there's an opposed stay motion it should go to the first available you know motions panel or whether it can be you know deferred to be considered with merits I mean those sort of questions I take it your client doesn't have any position on I my client specifically I don't know that she does have a position um I would at least agree with the court that if there is an objection there should be some sort of follow-up by the court but your client has no I mean like unless your client is going to get removed and come back like this is not something that's those issues are not going to affect your client in any way are they the procedural aspect that the court takes no okay okay judge ward law thank you um I just wanted to follow up on that because my understanding is not that neither you nor the government actually briefed or argued the question of nikin and go64c correct I think it cut up a little bit if you could hear me okay in fact below I mean before the panel and the panel and your argument before the panel neither you nor the government raised the whole rule 6.4 c issue correct I believe that's correct yes I think at least for petitioner side the only briefing that was made on the state was the initial filing and then there was nothing after that other than the respondents opposition to it counsel you had filed a motion for a stay in this case right yes um usually that's filed at the same time or at least this office files that at the same time as the petition for review okay and that stay was temporarily administratively granted is that right yes that's right and for about at least 10 months yes minimum 10 months okay and in your stay you cited a provision uh of the immigration naturalization act um that provided for purportedly provided for an automatic stay yes I do I did see that yes okay you realized that that provision was repealed decades before you filed your motion for a stay yes well to clarify I didn't file that myself but um I did that filing and yes I would agree with the court that that has been repealed okay um and that stay motion have you used that stay motion and other templates in filing I well I believe so I think the office does use that pretty regularly so yes is it still including that now repealed statutory citation I would hope not um but I think it is something that I will have to take back to the lead attorney yes council um what what is your what is the PSG here that you are arguing for so the PSG is essentially would want it to be based on the kinship um I believe and part of our argument is that the agency looked at it too strictly because it included the word targeted and then automatically dismissed the rest of the analysis but really in this case what we're arguing is that the basis of the claim was on the family kinship itself because the person here the petitioner was targeted uh specifically because of that relationship and that um is proven by the actions of the actual perpetrators because they asked specifically for her brother and um harmed her because of that relationship but when you say agency in this particular case there's a bit of a discrepancy between what the IJ ruled and what the BIA ruled but this is a question of law so the BIA can um jump right in there and did uh and so I just want to make sure that your argument is framed around the BIA's ruling on the PSG is that right yes the BIA's ruling but I if I remember correctly the the BIA's ruling also um affirmed what the immigration judge was stating so if we decide that the BIA may have affirmed something the IJ didn't do um then I think this wouldn't be a barrier the BIA would be free because it's a question of law under our precedent the PSG is a question of law the BIA would be free to do that yes and to articulate its own reasoning it would be free to do that but our argument is that it really did not do that it really for example well maybe I'm going to something else but um when we look at the nexus arguments and looking into the reason just on PSG just just on PSG and I don't think the IJ said anything about circularity did the IJ that's just the BIA isn't it I believe it was just the BIA yes and that seems to be to be contrary to Diaz-Renoso yes okay and the other thing that the IJ said that you think the the BIA may or may not have incorporated is particularity is that it yes correct oh I understood you to be saying that the IJ seems to have considered a family social group like one of the PSG's the IJ considered was is family itself enough and then the BIA didn't talk about that um it was very conclusory I think it just went by the what the PSG that was presenting um because it said targeted and automatically because it said targeted it said that it was circular right but like if there was a family group I wondered if the IJ had also considered what might have counted as a number four in the BIA is three which is just family by itself and the BIA maybe incorporated the IJ on that but didn't separately address that fourth articulation right yes correct okay should I continue counsel I just wanted to clarify so what can you state well how should I let me put it this way I think before the IJ uh maybe your partner at the law firm um Murray Hiltz yes he was asked by the IJ tell me exactly what you want to put for your PSG yes and he says kinships who are targeted by gangs he has other two other PSG's um kinships who are targeted by gangs is that the PSG you're arguing before us here well I'm not arguing for a whole new PSG or anything of of that nature but I am asking the court to not look at that PSG as it was articulate articulated so strictly because within that that's that's what the your you articulated for your client so yes yes that's correct but within that is the kinship and um as I stated earlier we would argue that that kinship aspect of it should have been analyzed separately because um I believe in even with the BIA they did state that a family relationship was cognizable but then again they just dismissed it because of just because of that targeting language I thought that acknowledged I think um it's a little fuzzy the whole record's a bit fuzzy but I think the the IJ acknowledged that there's a family that can be a cognizable PSG and then questioned whether she established that membership in that group by saying that she hadn't established that her brother was her brother yes I did see that as well however I would also say that there wasn't really any notice that that would have to be corroborated uh when she was found credible forgive me for interrupting but the the BIA the BIA didn't affirm that or didn't incorporate that part of the reasoning right so that falls out of the analysis I think membership falls out and that would be a question of fact at any rate yes so back to the what the BIA did rule right because PSG is a is a is a a legal conclusion and my BIA decides mentioned circularity which I think we've touched on that and then particularity yes we have case law saying that a family social group is the quintessential PSG yes correct counsel you're not changing your PSG description right no I'm not the same before the IJ and before the BIA yes that's correct it's the same um but again we're just asking that it not be looked at so strictly especially when that stated PSG does have kinship within it and all they don't look at it so strictly forgive me for interrupting but I have Judge Tong's question as well what exactly do you mean you stated it this way kinships who are targeted by gangs correct and you want us to interpret it how or what well it would be the substance is the kinship so it would be the kinship to the brother so I think that is included even within that PSG so that's why we're saying we're not changing it is the brother included in the PSG is he a member of that PSG I don't know that he would be because part of our argument also is that the reason he couldn't be because the reason she was targeted was specifically because of the relationship to him but the reason he was targeted was not clear at least not before the record and in fact she did say that she wasn't sure why he specifically was targeted but if we assume that he was targeted for some motivation that was entirely criminal let's say so if he had been a petitioner which he is not let's say it's completely not cognizable right then the quote for the nexus question the question is why was she targeted and what's your analysis there for her so for her it would be that she was specifically targeted because of her relationship to the brother from the beginning of her testimony she stated that they approached her because of the brother not because of anything that she did or may not have done it was always because of that relationship and had that relationship not existed then there would not be any harm so is the attacker's motive for seeking vengeance for uh rojas espinosa's brother relevant to the nexus inquiry i think it's a factor but i think here what's important is the relationship and why they are persecuting her specifically in what way is it even a factor in this well it's a factor because it's part of the story but i would say again that it's not what's important the petitioner here is petitioner and the brother is not and i don't know actually what he's doing um for his case or whether he's doing anything but here the question is what happened to her and why that happened to her and in this case it is the relationship to the brother so under your theory suppose there's drug dealer a drug dealer b drug dealer a steals drugs from drug dealer b who then gets mad and says return my drugs or i'm going to kill your wife and your best friend so under that theory would the the wife of drug dealer a be eligible for asylum or meets the nexus requirement she would be based on the relationship presumably of the husband but i wouldn't say that the husband necessarily would be part of the same psg because the reasoning why they're going after him would be different isn't that an oddity in your theory that the person who's directly harmed can't seek asylum on a protected ground but a person who happens to be related to that person who's being targeted can seek asylum perhaps but i think there has been a lot of case law that states that you know if it's not related to a particular social group or political opinion then unfortunately that person may not be protected um so in this case we're saying that there is fall under that protection it's not a derivative of analysis we've never said that no right so so there may be if we could just play out a few of these hypotheticals maybe there's a um to use judge lee's point there's a person who is in a rival drug gang or a rival union or rival whatever you want and a criminal act is taken um against him or her uh let's make it a husband to just be in a rival drug gang and um he is targeted by drug gang b and his girlfriend or his i guess his wife is with him if the car he's riding in is sprayed with bullets i think you would agree she doesn't have a claim she's caught in the crossfire she's there that's just a criminal act the difference is if if the gang there's this interaction uh an attempt by one drug cartel to out the leader of the other drug cartel but next week the aggressive drug cartel comes after a wife or a girlfriend because of that relationship because they want to retaliate because they want to put pressure on because they want to um exact additional maybe a ransom that's that person has a nexus then yes yes but well uh we would probably have to look at the case more but yes it's very fact specific right i think is what i'm trying to say it seems to be very fact specific you just happen to have a case where she's separated from her brother both temporally and they come on this record they come after her not because she's a random victim of crime but because she's his sister yes and that's essential agreement that it was not a random act um against this person it was specifically because of that relationship and we would say that the bia did not look at that um instead just said this is private criminality oh go ahead judge what do you what do we do with the um the paragraph at the bottom of page four of the record page two of the board's order um that you know after discussing the groups including kinships who are targeted by gangs um the the board says that the evidentiary record does not demonstrate that respondents were will be targeted on account of their membership in groups in the next sentence respondents have only offered speculation as to the motives of their purported persecutors um so you you need to show that that was not supported by substantial evidence right which in turn requires you to show that any reasonable fact finder would be compelled to reach a contrary conclusion on nexus and so what is the evidence that you would point us to that supports that view so in support of that view we would say the actions themselves against the petitioner so in this case after her brother even after the brother leaves the country they came after her they choke her they attempt to rape her and um then later she relocates and then again they find her and um i believe it was she lived in canyete and i believe then she moved to lima which is sorry but isn't your answer because they said we're looking for your brother yes each of those times that's the answer right the nexus comes from the fact that they said they were looking for the brother yes yes yes and that's that's my point in um in saying that there was nexus to the group that was discussed the the the kinship um but then and also looking at the sequence of events um that they even found her even after she relocated that also supports the the claim but but the board addressed that point in like a couple sentences down by saying that i think the inference the board drew from that was that they're looking for the brother and when the brother's not there they they target her um but it i guess the board's view is it doesn't follow that they're targeting her because of the brother as opposed to just you know randomly after not finding the brother so why why is that an impermissible inference for the board to draw well because they specifically are from the beginning they said we are looking for your brother and then when she says well i'm sorry for whatever she said but the point is that she didn't know where he was or that he left they then continued to harm her and look for her but if you had the same fact pattern you didn't have the sentence or the statement that judge friedland's called your attention to uh you might not have a showing of nexus these are very fact-specific cases are they not yes i i agree but in this case it is part of the record and she was found credible and she testified that they specifically were looking for her because of that relationship and so the attenuated after she moved you take the inference you take from that is that they were really targeting her because this is this is a follow-on attack after the original um what going back to the stay so if we were to conclude that the agency made a mistake here on nexus and agree with you and remand to the agency to look at this case again on a correct analysis of nexus were we wrong to vacate the stay like is the state basically what i'm trying to ask is is the stay of removal about whether you would get further proceedings succeeding getting for getting further proceedings or is it really about ultimately whether after whatever proceedings are going to happen your client is eventually going to get permanent relief so i'm sorry i couldn't hear judge friedland so my question is what does the stay of removal mean when we look at likelihood of success on the merits is it looking at whether you will succeed in getting a remand to the agency by having this petition granted in which case if we agree with you that we should remand to the agency and grant this petition we probably were wrong to vacate the stay or is likelihood of success asking about whether eventually after whatever proceedings happen between us and the agency she will eventually get asylum if that's the question then maybe we don't even know if we were right to vacate the stay or not because she may or may not eventually get asylum which one of those is the likelihood of success analysis um i'm not sure i understand completely but when we have to think about whether there's a likelihood of success for whether we should grant a stay of removal do we just have to think about whether this petition might be granted and remanded to the agency so i think yes and looking at the merits of the case and in looking at the different issues whether there is merits to the arguments made then yes the stay should have been granted it's possible that your client will succeed on making this nexus argument but will have a problem with relocation or some other factor is that part of the analysis on likelihood of success for the stay of removal or is it just if she's going to be able to get a remand to the agency because what the agency said is wrong well i mean ultimately the goal is that she would be granted asylum obviously but if that doesn't happen and let's say there are other issues i think the other factor is obviously that there's an interest and not removing someone who has a history or a fear of return because of events that were violent and that there's an interest a public interest in not allowing that to happen in this case can we go back to the psg and nexus i mean here there's no classic psg like someone being because of religion ethnicity etc but just using family as a nexus i mean it seems like we're creating it's almost like alchemy here we're creating something that doesn't exist because you know bad people will threaten family members all the time for their bad purposes i mean that's just reality it happens the gang members will threaten someone and then i'm gonna you know threaten your spouse children etc so it seems we're really opening the doors if we consider family and in such a broad way as a basis for nexus for a psg here well i would say that again it's just very fact specific and we also have to look at the remainder of the um the issues which in this case would also be that there there's an argument that there's no real protection from the government um so i think it was just have to be very fact specific and careful into if that is taken and that it doesn't really open the door because that's not really what we're asking that we open the door for everyone i don't know if i answered that appropriately alone typically are not enough but and there would have to be risk of harm it's got to be objectively reasonable and subjectively reasonable and depending on the protect her and there's quite a number of other elements to get to right right beyond nexus yes and i think in this case the agency didn't reach them yet so yes that's correct and again that's a lot of what we're saying in the argument um i'm sorry before you move on i'd like to ask you a question about the nexus argument so what you're arguing is that um because she says she didn't say in her declaration she did not say it in her declaration but when she testified at the hearing she said these hooded individuals approached her asked where her brother was located she didn't know and then they attacked her so we should draw the inference from that that the reason they attacked her was because of her brother because she was his sister and so it was part of the family but it seems the agency drew the inference that she was a target of opportunity they approached her said where's your brother i don't know well meanwhile now we have a woman in front of us and we're going to rape her um and the bia seemed to draw that inference this is just random criminality that the nexus is not established if there's nothing more than what um is uh than what she said there which is not much so why is that not supported by substantial evidence i mean why are we compelled to reach draw a different entrance and inference and reach a different result well because even in looking at that it was not just one instance where they found her and asked her where's your brother and then they said okay here's a woman and let me go ahead and harm her there was again a sequence of events after that fact um you know to where she relocated and they still went after her and as she stated i believe in her testimony there was no nobody else that she had issues with so so what did the so she said she went to her cousin's home and in another city and there was a note with a bullet but what did the note say i mean she didn't provide it right so there's no copy of it there's what is what does she say the note said does it say we're coming after you because of your brother i don't think in that note it specifically mentioned the brother but um it just stated we're going to harm you or kill you but so she's now a target yes presumably so again they've attempted to rape her and attack her she was able to get away because police were in the area and she leaves and they now are after her but what's the inference that is because of her brother i mean now she's become their target but it doesn't seems there's a reasonable inference that has nothing to do with the brother because otherwise that would have never happened had that initial maybe maybe not i mean maybe they wandering down the street and they see her and they decide to attack her well but then we're just speculating that that maybe could happen well the agency drew an inference that essentially it was she was a target of opportunity that they they she was a victim of crime and you're saying that's so unreasonable there's no substantial evidence that cannot be an inference that's drawn we're compelled to reach a different inference and that's what we'd have to do to say that the agency erred in its nexus analysis yes so i think the strongest evidence for that is that second contact um which was the bullet which was very imminent um i'm sorry ominous contact that had said nothing about her brother or family or anybody else maybe it said nothing about her brother but that the only reason would be because of the brother because like she stated in her testimony she had no other issues with anybody else and that initial contact even if it was prior to the second one it was because of that connection to her brother and not for any other reason that's the inference you're drawing which may be a reasonable inference but perhaps not the only inference yes i would agree yes uh reserve the balance of your time yes thank you good afternoon may it please the court drew ensign deputy assistant attorney general for the united states this court correctly denied petitioner stay for a request of removal pending review petitioner's threadbare motion did not even conceivably satisfy the demanding naken standard this court should now use this opportunity to clarify its standards for granting stays pending review and bring them into alignment with naken which is binding supreme court authority that squarely controls here in particular naken provides that quote a reviewing court may not resolve a conflict between considered review and effective relief by reflexively holding a final order in pending review unquote and so in your view how what is the evidence that this was a reflexive order it was issued automatically your honor under this court's general orders it was issued automatically and the frankly patent frivolousness of it it could not have issued as a result of judicial consideration it issued reflexively because of general order 6.4 i mean it is it's among other faults it cites three decade old law that is probably not within the bounds of rule 11 to say that this filing of a stay automatically gets a stay although ironically that is in fact what occurred uh it relies on a single sentence that it would violate due process not to automatically grant a stay in every single case but cites no case law for that proposition makes no sense either either even under matthews v eldredge you'd be looking if there was a pre-deprivation hearing but they received a pre-deprivation hearing before the ij and then bia so it's very hard to see how procedural due process could possibly support or mandate an automatic stay in every instance so counsel so counsel is it your opinion that every state should be denied then no your honor it's that every state should be decided by article three judges applying the ken standard which is what the supreme court is required so so we we did that in march right and then you you got an order denying the stay yes so the stay has been denied so at this point i mean you know sometimes a party has a damages claim but uh at this point what is there i take it you don't uh what is there for us to do about the fact that you suffered a delay before i mean you got the order you wanted you have the order what what's before us now your honor certainly this is among the oddest procedural postures that i've encountered so uh among you know the we asked the court what you would like to address you specifically said the stays so here i am addressing the stays uh in addition um you're sitting on bonk you often do so to provide supervisory guidance to the court as a whole so i don't think you know you could always reconsider and grant this day so i don't think it's strictly speaking moot this case is still pending review you could in fact do that and you could use that as an opportunity to bring this court's practices into alignment with the ken council since you're challenging an administrative order wouldn't it be more appropriate for it to for the stay procedure to be addressed administratively as opposed to an on-point proceeding your honor i think that's an alternative method of challenging it but i i don't think to challenge it before because there was an administrative order for the court to look again at that administrative order and determine whether or not there needs to be any adjustment to it your honor i think that would be an alternative method of raising it and certainly we intend to engage with this court on an administrative level and i've had conversations with the clerk of the court towards that end but just because something's an administrative order that does not bless its violation of binding court precedent there's no live controversy on that matter here as judge miller pointed out that stays been granted so we don't have a live controversy on that point today i disagree your honor this case is still pending that with the status quo pending still pending but is the issue still pending yes your honor you could reconsider and i would urge anyone ask for us to reconsider the your honor we filed a brief asking you to engage with the merits of niken and i i believe that's squarely before you i also think you want to ask us to reconsider the denial of the stay what's that has anyone asked us to reconsider the denial of the stay your honor to the extent that it would cause you to engage with whether or not your practices comply with then then i would say that yes go ahead and reconsider it if that's what you need as a vehicle to address the legality of your practices go ahead and reconsider it have you removed the petitioner we haven't your honor uh kind of for two reasons um one of them is that there is a minor united states citizen that would be removed with them and so in order to do that removal they need to get travel documents uh that takes some time and then and second the the procedural disposition is is very odd this is an extraordinary case where you know a state of review was granted it was then denied it was then this this this court stay was then stayed by the court itself uh then vacated then re-granted given the sort of whiplash and uncertainty i'm not i'm not surprised that dhs has not even aside from getting the travel documents has not done a removal you know frankly um i might have been concerned that one or more of you would be upset if in fact there was removal when you told us that you wanted to address the stay at an you know an en banc is not an ordinary everyday occurrence so uh i i think those are the essentially the multiple reasons why in this instance the removal has not yet occurred and um when we were considering the stay and we were thinking of likelihood of success what is the question is it is this person ultimately going to get immigration relief or is this petition going to be successful in getting a remand to the agency it's success on merit so i i think certainly if you look at the winter standard that's ultimate success on the merits it wouldn't be uh you know if certainly actually i think our court current precedent is otherwise i'm not specifically aware although i haven't and i'll confess they haven't surveyed this but you know if for example you had like a nipa case for example that got dismissed on standing grounds and they appeal to this court and they want an injunction pending uh pending appeal i don't think it would be enough to say we're likely to succeed on standing therefore give us our injunction on merits i think you would actually have to show not just that you were likely to succeed on standing but that you would have to be succeed on the merits of your nipa claim otherwise you're getting relief that you couldn't get uh otherwise without ever really having success on merits you would have only in fact by almost by definition you didn't have success on the merits you had success on jurisdiction yeah but it's difficult in this type of case isn't it and i appreciate you're grappling with this that and the number of cases involved make it hard for everyone right for everyone but it is not uncommon for us to get a case like this where the bia has really only reached a couple of issues yes your honor it can't not and so we can't grant relief relief we have to send it back because the petitioner may and very often does the claim fails at the next stage but we're not clairvoyant about what that evidence might be what they might decide regarding relocation for example so what would we do there i think you decided on the arguments presented so to the extent that the government doesn't you know specifically make arguments about alternative things that are likely to stand as obstacles to ultimate success on the merits on remand you could treat that as essentially like you know you could use the path that has been presented by the parties in their briefing and wouldn't necessarily have to be clairvoyant as to all the possible outcomes that could occur in that you know in the process on remand um just incidentally on your comments regarding this day i'm wondering if you have any information about the number of state motions that we receive each year so i asked oil to look at this the uh the the statistics are a little dated because uh they were last prepared before the government shut down um at that time there were roughly about 500 pending stay motions i believe um i've asked them to try to update information on that i don't have that currently that's something we could try to put together for the court and presented by 28 letter if that would you know be one related question counsel do you know how many of those have been unopposed by the government i don't your honor i believe that number was opposed uh we typically oppose uh um but i i can't give you specifics on that i'd be happy to look at that but i can't well it just said the logistics the practical logistics are hard for everybody right so the government there's the any number of cases and i think there's several thousand that have been administratively stayed the government has given notice that they're reopening those in batches which is very helpful so we can process them um you know orderly and and and what we're seeing i i think uh this is anecdotal on my part but what we're seeing i think very often in those cases government's doing its best too but many times they're requesting extensions because they're stretched really thin and can't brief them either so uh we do run very quickly into some pragmatic considerations about these motions for stay your honor certainly and you know what i might suggest is that you know we're certainly happy to work with this court on an administrative level to identify you know the cases that maybe should be decided first and we've reached out to dhs about that to identify instances that it makes the most sense to start like if you're clearing the backlog it makes the most sense to do so and and talking with dhs what i think make make the most sense and what we're looking at is uh those that are currently in detention with final orders of removal that are the whose country of removal is in the western hemisphere where we essentially have regular removal operations typically flights on a regular basis and so you know i've heard this court's frustration um you know particularly i think within the last administration this court would expend uh you know judicial resources deciding perhaps deny the stay motion and then the person would not be removed and you know i i understand there could be some frustration with like no matter whether or not you granted or stay denied the stay motion the the same the result will be the same the alien would not be removed um so i i think it certainly makes sense to start uh with categories where we think removal is quite likely and and you can see that but you know in the long run uh this court needs to bring its procedures in line with the can you know it cannot be simply that binding supreme court precedent will be followed where we identify particular cases where the need to follow the supreme court is particularly acute it needs to be followed in all cases and and i think you know that that needs to be the ultimate goal is compliance when they can i think the original stay panel opinion identified where that where that's you know where that's not occurring um and and ultimately the government's position is that that needs to end what would that look like for your perspective which step your honor they can you say we have to be in compliance with the can what would that look like your honor uh and talking with uh within oil and actually some i believe kind of with other stakeholders they've identified the third circuit's procedures as as something that uh both the government and stakeholders have found particularly uh particularly uh you know better or better sort of balancing of it the way the third circuit does it is they have something of a screening mechanism that answers for that looks at four questions uh whether or not the pfr is timely uh whether or not it's in the correct venue whether or not there's a actually a final order of removal and whether or not the court has authority to grant to uh review i think that last one is in part to you know review for example a final order removal following expedited uh expedited removal uh would not be within the court the court of appeals authority and only after that point does an order issue uh and then they you know it's briefed and typically decided within 30 to 45 days who conducts that initial review is it a three judge panel i believe it's the clerk's office but then it quickly ultimately shifts we're not you know we're certainly not advancing the position that administrative stays are per you know per se unlawful obviously we ask for them with some some regularity um but they can only last so long as the court needs to as the court needs to decide it they can't languish and so what does that mean when when we have a circuit that has over half of all of the immigration cases filed in the country i don't think your your proper is premised on the notion that the third circuit's caseload is comparable it is not uh your honor obviously this court has a disproportionate share of the the cases uh but you know ultimately the the supreme court's decision in the ken is does not have an exception for you know burdened caseload i'm just asking about this third circuit process that you're a sec did you say that um whether the briefing is complete as part of it or not no uh no your honor uh so so they would grant an administrative stay as long as there is jurisdiction over the case basically and then that stay would be in place at least through the briefing and if there's an argument so you at least in our court the way briefing and argument work especially with the government getting extensions it's six months then at least right your honor it's only briefing on the the motion for a stay itself it is not the motion it's not the merits briefing so to speak and so that's why the it's fully briefed and decided typically within 30 to 45 days of the completion of the screening um the screening and the issuance of that administrative stay right it just gets tricky because of course there's this baked-in likelihood of success question that judge freedom was asking you about and so i appreciate your offer to um that the government's willingness to maybe maybe prioritize the cases that we need to be looking at um i don't want to disregard that i appreciate that but i i do think this is um a lot harder than it looks i understand your honor though i think there's certainly something to judge van dyke's you know observation that by giving out stays automatically it creates some of the very burden that then feeds into the circle of you know more filings um that you know is certainly it bringing procedures into compliance when they can may help with the the burden itself um you know and i think i appreciate that so could you just take one more run at the at the um maybe the logistics of the backload that we have and looking at the need to right make likelihood of success on the merits um determinations fuzzy but a likelihood of success on the merits given judge friedland's point which is that we very often get requests for extension understandably i think the government's scrambling as fast as it can too but how would that how how does how would that look going forward the the nature of an administrative stay is to stay long enough for the court to decide the motion and not further and and justice barrett's concurrence in united states versus texas is pretty uh instructive on this point but to the extent the government is requesting an extension on the state motion that would necessarily be part of why the the court needs more time beside the state motion you know it's not in fact if it's not fully briefed it's hard to fault the court for not deciding a state motion in the posture of it's not fully briefed and not ready for decision do you know what the fifth circuit's procedure is because i assume they have a comparable workload uh in terms of immigration cases i i don't specifically know what the fifth circuit's uh procedures are uh it's it's uh its docket is not quite as heavy um nothing is comparable to the ninth circuit correct that's my understanding your honor you're you uh this court accounts for approximately i believe 40 to 50 percent of filings that we handle within the office of immigration litigation um it is by far and away the largest circuit counsel in light of this discussion sorry judge miller um um what was wrong with what the panel in this case concluded that if the briefing is completed on the stay motion then the motion will be given to the next available motions panel in other words there is resource considerations baked into the to the holding itself your honor we certainly agree with that you know and i think that kind of follows the standard you know that an administrative stay is should last only so long as the court needs to decide but if you're referring it to the next available motions panel i think that you know falls within that that sort of conception of you know that that's part of the time that's needed to decide the state motion and just to understand procedurally what we would say here the the opinion that you're envisioning would be you know we have denied we denied the stay motion um we could reconsider that i'm not sure the assurance asked us to but but she could have um we deny reconsideration and by the way the clerk's office should start following the procedures in the third circuit i mean is that sort of what the opinion would say possibly your honor there there is an oddity to this procedural posture where some of this is administrative and some of this is legal and to the extent that you want to address administrative things that could either be in you know through an en banc opinion it could be through the administrative processes of this court we're not going to tell you how to do your own administration which we just ask that it be within the bounds of the canon law um but uh as the opinion you know i don't even know that you would need to reconsider there's also nothing that prevents a court from you know issuing an to explain what it's done it's you know it's certainly not unheard of for a court to say here's our decision and an opinion will follow you have you have issued your decision but you can you know it's still a live issue you could still issue a supplemental opinion that would address these issues if we're just talking about the procedural vehicle so frankly i'm worried at this point that she does have a likelihood of success and so we made a mistake in vacating the stay at this point because i don't understand the nexus now that we've all looked at it more carefully it seems like she was targeted because of her family relationship with her brother so could you speak to that merits question is certainly uh although if i could say antecedently that the state could just also be denied because there's just no showing of irreparable harm here beyond removal itself and that and ken also makes clear that that's not good enough to get a stay what's not good enough on its own but along with likelihood of success it would be uh yes and and also you know considering the third and fourth factor is basically the you know public interest and balance of harms um all of which are necessary um you know i i think the simpler the simpler question here is nexus than psg um and you know i think you need to look no further than their own briefs to understand why the nexus is problematic i mean on page seven of their brief they said mr rojas espinoza's brother a member of a workers union began being mistreated when he openly disagreed with a union raising quotas and attempting to take over more projects from other groups then she testified as well that what you know the brother was was targeted for criminal reasons or union reasons or whatever reasons but this petitioner his sister wasn't she targeted because she was a sister uh that's not the the psg that was presented to the ij the ij you know following her attorney found that the uh the the third uh proposed psg group was kinships who are targeted by gangs um that is entirely circular counsel are you saying kinship is something different than family no i'm saying that her own proposed psg is not cognizable and and the petitioner needs to be held to the psg that she exhausted before the ij and bia and in fact is precluded from raising a different psg than she raised below what do we do with our we held it in diaz reno so that you know including some non-cognizable group it's not it's not a poison it's not a poison pill and that the agency should then take a case-by-case analysis so what do we do with that because kinship was included here and you know as petitioners argued maybe the agency should have looked at it less less strictly in the petitioner's words your honor that uh the the ds decision it says that including targeting is not a per se like fatal fault that causes it to be impermissibly circular but here the proposed psg is entirely circular it is simply kinships who are targeted by gangs it is defined entirely by targeting and that's it i mean are kinships who are targeted by gangs likely to be targeted by gangs the answer to that is of course yes because the definition is entirely circular i directed to the supreme court decision in bray as well which addresses this sort of circularity problem and i believe it's either 1983 or the title 7 context so what i think what they're suggesting is that the agency what petitioner suggesting is that the agency should have just um taken that third psg kinship who are targeted by gangs and then parsed it and just considered the word kinship and considered psg based on family and why is that not permissible why why shouldn't the agency have been required to take out the portion that dealt with targeting because of gangs and just address the kinship or the family psg well i think the ij is only obligated to decide the arguments presented to i don't think the ij is obligated to make a better argument for petitioner than the petitioners on council is making i mean i did sorry the ij acknowledged he makes a statement again it's a little fuzzy he makes a statement acknowledging that family is or kinship is a recognizable psg and then what the ij relied upon is that what he thought was the failure for the petitioner to prove their brother was a part of the group but she was a part of the group brother she he he said uh she petitioner didn't prove that the brother was her brother that's a different basis entirely it is different your honor but i i don't think that matters here because that fuzziness in the ij was not a decision was not the grounds of decision of the bia which is before you the bia said that that third group didn't work because it was impermissibly circular and i think that's what squarely but the ij says this thing about family and then in petitioners appeal to the bia she says family is a group and i really am his brother and there's no reason to think otherwise and then the bia just ignores that argument so at the very least hasn't the bia failed to address an issue presented to it that the ij did consider i mean i actually think the bia incorporated the ij but putting that aside if it didn't at very least didn't address that other theory that was presented to it and that was exhausted at least at the ij level by the ij having reached it i don't believe so your honor i mean and deciding the psg as was rarely presented to the ij i don't think that's committing error i think that's deciding the issues presented to it well it didn't say we think that ij went further than it needed to or something i mean it just sort of missed this i don't think so i think it took the definition that was a petitioner's own definition of the proposed psg and explained why petitioner's own proposed the uh psg did not was not legally cognizable i don't speaking now the ij or the bia i think the bia point if you could go back to judge baity's question because i didn't mean to deter you from it her question i guess i'm paraphrasing there there was this group it wasn't it wasn't squarely presented family as a social group it's this kinship targeted on account of and i think the question had to do with why was the ij required to um parse it right and i and i'm i'm trying to get at what your response to that is because in on this transcript it looks like the ij did parse i don't know if the ij had to but the ij did and i read the record to acknowledge and as an acknowledgement by the ij that the family could be a a psg a cognizable psg do you read the transcript differently you're i i have not parsed that that that closely i've looked at certainly the transcript where it has three proposed psgs and then the bia explains what those proposed three proposed bsgs each do not work in i i think that's a sufficient basis for decision you know uh i i'm there may be straight language that i'm not thinking of recalling to you know immediately here but i think at the end of the day they proposed three proposed psgs and bia said why each proposed psgs using verbatim language as proposed by petitioner's own counsel explained why those definitions as proposed by petitioner petitioners themselves did not were not cognizable as a matter of law i don't could i just ask let's just say for a moment that it had been presented so i know this is not i know you don't believe this happened but if she had proposed a family psg and the agency had denied it on the ground that because the brother was targeted for being in a union her psg of having been targeted as his sister can't succeed because because of the union thing because even if she was targeted just for his sister it doesn't matter because it was started with him being targeted for being in the union do you think that would be correct reasoning or would she have a psg nexus because of her family i i think that reasoning would work the the here the bia explained as well that the the nexus failed because petitioner lead petitioner herself admitted that she did not know why she was attacked and there was further a lack of evidence that would you know fail to compel a conclusion that the requisite causal nexus was established here you know in particular uh she said it was based on that kinship but since uh since she left uh to the united states uh she has some family some family left in peru some of the united states neither of them have experienced any more threats and the lack of any more threats combined with the fact that she herself was only speculating as to what the motivation of the attack was means that there under a substantial evidence review there is not enough to set aside the the nexus so it sounds like you're saying though like say the rest of the family had been attacked and every time she was attacked they said we are attacking you because of your relative we're attacking you because of your relative are you saying that that still can't be a family group because the brother was targeted for other reasons about being in a union or are you just saying the facts here don't rise to the level of a family group being targeted because of the brother i think that would raise additional questions as to you know that it was persecution rather than criminality certainly in order as to nexus so i'm getting at this because we have a case called rodriguez zuniga that suggests that it's never enough even no matter how obvious the family connection is for the second person if the targeting of the relative the first person is for a reason other than family for theft for retribution for whatever when you target the next family member to get at the first family member it can never be a nexus maybe that case is wrong it seems like the reasoning the ij and bia might have used here is that that kind of nexus isn't okay i think you're trying to you're kind of acknowledging it could be okay just it has to be bad enough harm and bad enough family but the idea of it being a family nexus can't is okay in theory your honor i i don't think we're making that as a square concession i think it's just as presented here there's no need to reach it because the this the nexus finding is a finding of fact it's only reviewable for substantial evidence and there is certainly not enough evidence here to compel a conclusion that no reasonable fact finder could have made the nexus finding that the ij did here counsel we have some language in our case law that says family is the quintessential particular social group we see that in parada we see that in another case real do you read that i mean she's alleging kinship let's assume for these purposes that kinship is family why isn't that enough under that case law someone who asserts family that automatically confers psg status well i i think there is certainly mixed case law on this and i i don't think that that you know this case really presents the vehicle certain to resolve that certainly it's not brief in any particular depth um i think you would certainly need to be cautious in that because if family you know is per se a psg and that's enough you would then have a lot of concerns with it's not persecution because it's it may just be ordinary criminality where you know using judge baity's uh example it may just be a target of random criminality or target of opportunity that suddenly gets transformed by overly loose psg into persecution when it's really just ordinary garden variety crime which is not what congress intended for you know to to make out as a viable asylum claim council um i've been thinking about a kind of a thorny issue because i understand there are not only bia decisions but ag decisions that have pretty clearly decided that a family by itself is not automatically a psg one still needs to go through the three criteria of constitutes a psg immutability particularity and social distinction right and so if those administrative decisions those doj decisions are intention or in conflict with ninth circuit case law in a post loper bright world what do we do that that's messy your honor so loper bright suggests that stare decisis you know to the attached to your prior decisions um it continues to have force even though so even though you might have applied chevron deference in the prior precedent and chevron is no longer good law those precedents are still should still be good law uh now that that's kind of the supreme court applying loper bright to itself i think it then gets very messy if you were to ever go on bonk in a post loper bright world and what's the starry decisive effect of that candidly i'm not sure i i you guys will have to wrestle with that i suspect um and uh so i i can certainly articulate the general principle which is that uh chevron's overruled but loper bright makes clear that the starry decisive effect of prior precedents including of this court that that relied on chevron as an analytical method to reach decision it did are still good law um you know how that comes into play in future cases um agree that our own precedent requires us to look at the elements of a psg right i i think so your honor i mean it's certainly at that level of generality i mean yes you certainly need to analyze that wiggle claim i just before you conclude i i don't know if i heard your answer on how much is too much time under nickin your honor i i don't think that there is a hard and fast rule i i i think the nature of the administrative stay needs to be the touchstone an administrative stay can be issued you know for as long as it takes for the court to decide the issue uh but it cannot be a sort of indefinite because then it becomes a de facto you know stay pending appeal or stay pending review it has to be a stay only for so long as the court is needed for the court to decide the real stay motion um which is why administrative stays are often granted by explicitly disclaiming in the analysis of the merits and so certainly what you have here where it persisted for months or in other cases even for years that is not an acceptable or lawful administrative stay under nickin um you know where that line is will probably depend on many circumstances you know for example we gave the hypothetical of what happens if the government requests an extension on its um you know filing an op and you know it's certainly hard to fault the court for letting the administrative stay continue during that pendency because it doesn't have what it needs to decide the state motion and you're not citing any case for that other than the can well the nature of an administrative say i think just justice barrett's concurrence in united states versus texas uh this court's decision in doe one versus trump concurrence took into account the um challenges for a court in processing these it certainly didn't bless the sort of open-ended that we have here is identified and i i think the discourse decision in doe one versus trump two also makes clear that administrative stay is only you know permissible for as long as the court needs to decide the stay motion it's not an open-ended you know full-blown stay pending repeal or stay pending review thank you thank you your honors may i come to you um very briefly i just wanted to note that the family relationship relationship um excess exists excuse me independently of the harm um and i believe dias reynoso does state that the question is whether the group itself is defined exclusively by the harm um which is not the case here um here the non-circular group is the immediate family of the brother and the harm proves why the family was targeted it does not define the family itself um and then very briefly i just wanted to touch on the withholding of removal issue because the via stated the petitioners failed asylum and therefore failed withholding and then also very briefly stated that it considered the a reason standard but again it was very conclusory and did not um independently analyze that part which is important because there is a differentiation there and that there's different burdens um of proof for the petitioner in that case um also on your psg articulation again you said immediately found immediate family of the brother but the psg art articulated before the ij and before the bia was again kinships targeted by gangs right yes that broader psg yes that's correct um but again our argument is that that psg is not simply just defined by targeted by gangs it's defined by the family relationship in this case and unless there's any more questions i think i will end there thank you thank you um thank you uh miss uh flores rodriguez i really do appreciate on behalf of the court you're coming in person to argue this case um and mr ensign thank you very much for your oral argument presentation um a case of maricruz marisol rojas espinosa versus todd blanch is now submitted and we are adjourned thank you
judges: MURGUIA, WARDLAW, GOULD, RAWLINSON, CHRISTEN, FRIEDLAND, MILLER, BADE, LEE, THOMAS, TUNG